Good morning. May it please the Court, Amy Phan, on behalf of Appellant Oscar Juarez, if I may reserve two minutes for rebuttal. You may. Thank you. In this case, the District Court committed procedural error in its application of a four-level increase for an aggravated role. It is clear from the United States Whitney case, Ninth Circuit, that for the enhancement to apply, there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime. That control must be real and direct influence of others, not just over the activities, not even if the activities is a contributing factor or if the defendant's conduct is a contributing participant in the offense, not even if the conduct may have been integral to the success of the crime. Here, this is a typical stash house case where the government creates the crime, sets up this fake stash house with pretend drugs, and has a C.I. go look for individuals who is willing to participate in a robbery of this alleged stash house. And here, all the members, this was a codefendant case, all the members were integral part of the offense. So, counsel, what would you call the person who is the direct contact with the C.I.? What would you call that person? It's just a person in concert with the others that's just been designated to deal with the informant. In this case, with the government supplemental excerpt, we see that the initial contact was not just with Mr. Juarez. It was with all of the codefendants. They met, they discussed, they talked about it, and then it was thereafter that Mr. Juarez, the appellant here, met with the informant and then met with the undercover agents. Why do you think Mr. Juarez kept referring to these other individuals as his crew, his crew, and that he would be the one to be in contact with them? Well, I think in this case the facts show that they may have participated in other crimes together. And so for him to say our crew... No, his crew. His crew, it could have just been my buddies, it could have been the people I run with, it doesn't mean these are the people that I hired, that I directed, that I told what to do. But, counsel, would it be clear error for the district court to interpret that otherwise? It would, because in this case the facts only show that they all had discussions, they all talked about gun use, they all talked about going in, they all talked about how it's going to go down. There's no evidence here, such as in the other cases, such as in NART, N-A-R-T-E, where the defendant violated the Lacey Act in harvesting clams without a license. And in that case, that individual hired employees as lookouts on the boat, hired divers, hired somebody to go out and find buyers so that he can distribute and sell the clams. It's not, in the Harper case, there was the attempt to shut down the ATM machine so the technician could come out, and then they would rob the technician. In that case, the court found that just because this person knew, the defendant had some knowledge of banking, and could indicate how the crime was going to go down, this court essentially said that they used a but-for test. That was not enough. There had to be more. In the government's, even in the... Would that more be something to the effect of control over the so-called his crew? If there's some evidence in the record that your client tried to get another individual to take responsibility, say, for certain actions or conduct, like the weapons, is that evidence of control on his part? If there was indication that he recruited him for that purpose, in this case, that's not clear, because the person that indicated that he was going to take, that he would take responsibility for, I believe, was his cousin. Even if you assume that there may be another interpretation of that, and you say it's unclear, wouldn't a district judge here have the option to go with either if it's a reasonable choice? No, it has to be clear. It has to be clear that there was a control over the other. Not, well, perhaps he controlled him. All right. Counsel, once the district court judge makes a decision on leader or organizer, could you please remind me, what is the standard of review for us? Is it a fact issue that's clear error, or is it abuse of discretion, or is it de novo? It is an abuse of discretion on the application of the facts to the 3B1.1 section. And so here would be an abuse of discretion. My question would be, you know, given that he refers to the others as my crew, and he's the one in the most contact with the agent, why is it an abuse of discretion for the district court to find he's a leader or organizer? As we see from the government supplemental excerpt, he was only the contact after the informant met all the other defendants and had explicit conversation with the other defendants about the guns, about the stash house, about driving, about who was going to go where, about having to pretend to hit one of the other guards in this supposed stash house. So there was detailed conversation with other defendants, and it was only thereafter did the CI and the undercover agents meet with Mr. Juarez. There's no indication that Mr. Juarez said, hey, I hired all these people, such as in the Hernandez case that's cited in the government's case, in the government's filings. There was a counterfeiting case, and the defendant hired two legal alien workers. He brought them to San Diego and then to this site to make the cards. He gave them instruction. He showed them how to do it. None of those facts are here. This is a case where it is ‑‑ it seems clear from the conversation, from the meetings, that the defendants all worked in concert with each other. That is not enough under 3B1.1 to suggest that Mr. Juarez controlled any of the other individuals, and that is necessary. It's not enough that just because Mr. Juarez was part of this group, it would have been successful. That is not enough. They have to show control over somebody, some managerial. Okay. Thanks, counsel. I know you wanted to keep some rebuttal time. I'm just reminding you, it's up to you, but your clock's at two minutes now. Thank you. If I may just briefly talk about the criminal history. I think in this case, the criminal history upward departure, unlike the government's position indicating it was a variance, it was not. The court indicated it agreed with the government, and the government sought an upward information of criminal ‑‑ of juvenile arrests and or adjudications that were already counted in the pre‑sentence report. With that, I will reserve my time. Thank you. All right. Thank you, counsel. We'll hear from the government. Good morning. Good morning. May it please the court, Jeff Mitchell on behalf of the United States. I'd like to start off by responding to a few factual misstatements made by appellant regarding the role adjustment. It is not accurate that the first contact with the co‑defendant took place with all the other co‑defendants in this case. The first contact that counsel is referring to is the November 8th contact between the co‑conspirators. Those people were not any of the co‑defendants in this case. Those co‑conspirators told Juarez that they believed that the informant and the undercover agents were, in fact, law enforcement agents, and asked defendant Juarez to take photos of the undercover agents so they could investigate them. That did not happen. Those people did not show up on February 23rd for the takedown. Those people have nothing to do with this case, and it was defendant Juarez who is the only person that participated in the planning of the robbery with the undercover agents. Also, the standard of review is clear error for the role adjustment. It is not an abuse of discretion, and this was set forth in the United States v. Narti. I would also like to respond to a couple of factual misstatements in Appellant's reply brief. On page 8, Appellant has contended that the complaint affidavit was not presented to the district court and that this court should not consider it. First, I'd like to point out that the government cited to the complaint affidavit 18 times in its sentencing position paper. Therefore, it was properly before the district court. Appellant also contends in the reply brief that certain facts in the complaint were not presented to the district court, and it was inappropriate for the government to cite to those facts in the answering brief. That is not accurate. The first example was that Appellant said that it was inappropriate for the government to cite that the defendant said that the robbery was going to be a gun battle. On excerpt of record page 18, it shows that the government did mention this fact to the district court in its sentencing position paper. Defendant also contends that the government did not present any evidence to the district court that defendant provided the firearms for the robbery. Again, this is not accurate. Excerpt of record page 23 and 27 show that the government did mention this fact to the district court in its sentencing position paper. Appellant also argues that at sentencing, he objected to reliance on statements made by a cooperating defendant. Again, this is not accurate. At the sentencing and in his sentencing position papers, defendant never mentioned anything about the cooperating defendant ever, let alone make an objection to reliance on his statements. I'd now like to talk about the district court's oral pronouncement of sentence. The district court did not commit any procedural error, plain or otherwise. The district court addressed defendant and counsel and allowed them both to argue and make any corrections to the PSR. It reviewed the sentencing materials. It properly calculated the guidelines. It stated it agreed with the government. And then it stated the specific 3553 factors that it was relying on to impose sentence. Counsel, would you please address opposing counsel's argument that the district court departed upward in determining the criminal history score? Yes, Your Honor. There's nothing in the record to support that inference. It's true the government asked for an upward departure, but it's clear from the record that the district court denied the government's request. The district court stated that it found that the defendant was in criminal history category 1, not category 2, which was what the government asked for. It then stated the guideline range based on a criminal history category 1 and offense level 22, which was 41 to 51 months. That is the correct guidelines range for a criminal history category 1 and offense level 22. If the district court had imposed an upward departure, the guideline range would have been 46 to 57 months. And then when it explained the reasoning for a sentence, it stated specifically that the sentence was imposed based on Booker and the 3553A factors. And that's on page 8. When you talk about the procedural method here of calculating the sentence by the district court, was there some indication here that perhaps the district court should have notified both sides that it was thinking about some type of increase in the offense level? To justify whether you consider an upward departure or not, a variance or not. Wouldn't that have been perhaps a better procedural path to choose? If the court was going to upward depart in criminal history, Your Honor is correct. The court should have explained the reasons for the upward departure. But there is no requirement for that for an upward variance if it's based on the 3553. So in this situation, based on this record, the court was not required to explain any more than what it did explain. But the court didn't adopt the probation officer's guideline recommendations, did it? It did adopt the guidelines calculations for a total offense level of 22 with the four-level enhancement for the role adjustment. And it calculated the same guideline range, which was 41 to 51 months. And at the end of the PSR, the probation officer indicated that there were factors to support both an upward departure in criminal history as well as an upward variance based on the 3553 factors. And the probation officer's overall recommendation was not disclosed to the parties, so we don't know what actual sentence the probation officer recommended. But the PSR indicated there were factors for both a variance as well as a departure. I think you've answered my question. Then in the Ninth Circuit, then, there's no requirement to notify the parties when the court is contemplating an upward departure or variance. I believe that is true for variance, but not so for the departure. As for the criminal history. And along those lines, I'm sorry, I know I'm taking up some of your time on argument, but the sentencing issue is, to me, for your point, the thing I'm focusing in on, this idea of variance versus departure, it's hard for me drawing a line between the two. And in that regard, I'm still concerned procedurally on that. And is there anything illustrative about this record to suggest that, well, this really wasn't a departure, it was, as you say, a variance? Yes, Your Honor. I believe if I can draw the Court's attention to Excerpt to Record, page 7. This is where the Court calculated the guidelines, and it indicated that it was going to be a criminal history Category 1. If it agreed with the government and granted the government's request for an upward departure, it would have calculated it, the criminal history, to be a Category 2, and the guideline range would have changed to 46 to 57 months. All right. Thank you. As for the criminal history and the rap sheet, the government submitted the rap sheet in support of its argument for the criminal history upward departure. Did you give that rap sheet in advance of the sentencing hearing to the defense? Yes, Your Honor. The rap sheet was turned over in discovery originally. They had it from the beginning. It was submitted as an exhibit to the government's sentencing position paper, which was approximately six to eight weeks before the sentencing hearing. And there's no evidence in the record that the defense expressed surprise or whatever that was used at the sentencing hearing? That is correct, Your Honor. There is no indication of that, and the defendant did not object at all to anything within the government's position paper regarding those four additional offenses. So this would be reviewed for plain error. However, there is nothing in the record to show that the court relied on anything in the rap sheet. In fact, the rap sheet was submitted in support of the upward departure, which the court denied. So everything regarding the rap sheet is irrelevant for the sentencing purposes and the issues that we have here on appeal. Regarding the ---- Could you wrap up, counsel? You're in the negative at this point. Thank you, Your Honor. I'm prepared to submit. All right. Thank you. Rebuttal. Thank you, Your Honors. The defendant, the defense did specifically object to the application of the aggravated role at excerpt of record, volume one, page 10, as well as the government's request for an upward increased, upward departure to a criminal history category 2, and went forth to discuss both of those. In this case ---- Counsel, do you agree that the court did not do the upward departure to category 2 and instead did a Booker type variance? No, I do not agree to that. The government specifically in their sentencing position asked for an upward departure from criminal history category 1 to 2. I'm not going to ask for it, but where in the record does it indicate that the court gave an upward departure on the criminal history? The court ---- Counsel has argued on the government side to specific language showing the calculation of the guidelines remaining the same. So what do you have that controverts that? The court indicated in its sentencing that it agreed with the government's position. The court did not say, I agree with the government's position for Booker variance. And again, it goes back to what specifically the government requested. The government requested an upward departure to criminal history category 2, attaching the rap sheet as additional information, as additional allegations that there were four or four additional arrests, juvenile arrests or adjudications that was somehow missed by the probation office. Where are you referring in the record to the government's agreeing with the ---- to the judge's agreeing with the government? Let me have a moment here. Because if the guideline calculations show criminal history 1, it's obvious that the district court did not agree with the government at least to that one particular item. The court specifically stated, I agree with the government. And I just need to find that, Your Honor. That's a very broad statement. But the actual indicia of how the government, of how the judge came down on the criminal history is reflected in the guideline calculation. Well, I think there's, I think that's also the problem. There's also a problem here in how the court issued, imposed its sentence. Similar to the Hammond case where the judge in a supervised release violation case gave 87 months, gave a custodial, excuse me, gave a custodial term sentence as opposed to a recommended residential, residential halfway house recommendation. All the court there said was I don't give sentences without careful consideration. That's the sentence. The court there said that's not enough. Under Rule 32C and under Section 3553 subsection C, the court has to give more. And the problem, one of the problems here and was required for, and I'm submitting we should remand it, is that in this case a district court judge failed to articulate the basis for the sentence. And, yes, the court does need to give notice and give reasoning as to what it's, what the sentence is comprised of. It doesn't have to give explicit minutia detail, but there has to be something, and I've provided in the brief, that gives the reviewing court and the parties an idea of what the court is basing on. Here the problem is that we, the judge, the district court said I agree with the government. And then the court went on to state, yes, I agree, the criminal history category one, and then a sentence of 57. But a sentence of 57 is the high end of the criminal history category two, which is exactly what the government asked for. Was it at the sentencing hearing that you're talking about that the court said I agree with the government? Was it at the sentencing hearing? It was, Your Honor. So the sentencing hearing is only eight pages. That's correct. So where in there are you talking about? I'm sorry, but I may just have one moment. I don't see that in the sentencing hearing. At excerpt of record, page eight, it indicates that the district court stated the sentence is opposed as the sentence agrees with the government's recommendation that the sentence is sufficient but not greater than necessary to comply with the purposes. That doesn't say anything about the criminal history. In the government sentencing position, they asked for an upper departure and a Booker variance in the same argument. And there, in the conclusion of the government's argument, they indicated that that was sufficient but not greater than necessary. And one of the problems with this case is that because the sentencing transcript is only eight pages, and all the court indicated was this is similar to Hammond, I agree with the government's recommendation. We don't know whether, I mean, I submit that the court upwardly departed. However, the government's position is a Booker. But we do know what the, we do know that the government calculated the criminal history category as a criminal history one. We do know that from the record. There's no dispute that the criminal history category calculation is category one. The issue here is that the government also added in their sentencing position paper the rap sheet indicating, arguing that there were four additional crimes when he, when the defendant was a juvenile that were somehow missed by the, by the probation office. All right, counsel, we understand your argument. Thank you. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Lemelle, Gould, Rawlinson